456 So.2d 1230 (1984)
OCEANUS MUTUAL UNDERWRITING ASSOCIATION, (BERMUDA) LTD., Appellant,
v.
Noemy Fernandez FUENTES, As Personal Representative of the Estate of Alberto Fernandez Fuentes, Noemy Fernandez Fuentes, Individually, and Meryan Esther Fernandez Fuentes, Appellees.
No. 82-2483.
District Court of Appeal of Florida, Third District.
September 18, 1984.
Rehearing Denied October 30, 1984.
Holland & Knight and Michael L. Rosen and Julian Clarkson, Tallahassee, for appellant.
Horton, Perse & Ginsberg, Arnold R. Ginsberg, Edward A. Perse and Charles R. Lipcon, Miami, for appellees.
Before SCHWARTZ, C.J., DANIEL S. PEARSON, J., and ROBERT C. SCOTT, Associate Judge.
*1231 DANIEL S. PEARSON, Judge.
In 1973, Alberto Fuentes died from an illness allegedly contracted in 1972 while he was employed as a seaman aboard the cargo ship "Carlos Miguel." His wife, Noemy Fuentes, on behalf of herself and a child of the marriage, brought a wrongful death action in the United States District Court for the Southern District of Florida against InterAmerican Lines, Inc. (IAL), the registered owner of the ship, and Oceanus Mutual Underwriters Association, (Bermuda) Ltd. (Oceanus), alleged to be IAL's insurer. Asserting, inter alia, that it was not IAL's insurer but instead the insurer of Florida Panama Lines, Inc. (FPL), under whose policy the "Carlos Miguel" was entered, Oceanus moved to dismiss the action against it. The suit against Oceanus was dismissed without prejudice, but Mrs. Fuentes chose not to amend her complaint. The federal court action ultimated in a default judgment in the amount of $401,000 being entered against IAL.[1]
Judgment against IAL in hand, Mrs. Fuentes brought the present state court action against Oceanus, again alleging that Oceanus was IAL's insurer. The trial court denied Oceanus' motions for summary judgment, directed verdict, and judgment notwithstanding the intervening adverse jury verdict. Oceanus appeals, and we reverse with directions to enter judgment for Oceanus.
The evidence reveals, without dispute, that in 1966, IAL, the operator of a cargo service between Panamanian and United States ports, sold the "Carlos Miguel" to FPL, a charterer of ships. Notwithstanding the sale, the ship's registry remained in the name of IAL.[2]
After its purchase of the "Carlos Miguel," FPL authorized its general agent, InterAmerican Shipping Corporation (IAS), to obtain fleet insurance for all ships owned by FPL. Soon thereafter, Oceanus accepted the risk for a Protection and Indemnity (P&I) Policy and issued a Certificate of Entry on the "Carlos Miguel" naming FPL as the sole entering member. The Certificate of Entry provided in pertinent part that FPL, as the assured, had entered the "Carlos Miguel" subject to the Articles and Rules of the Oceanus Mutual Underwriting Association Ltd.; that the insurance was to cover Protection and Indemnity Risks on a mutual call basis in accordance with the Rules of the Association; and that the limit of liability for any one accident or occurrence was to be five million dollars.
Unlike more familiar types of insurance policies, the documents which formed the subject policy, as the trial court recognized, were the cover slip (issued at the inception of the policy and upon annual renewal) and the Rules of the Association. The cover slip named and briefly described the vessels for which FPL was to be indemnified and protected, the period of insurance, the amount of the deductible and limit of liability, and incorporated the Rules of the Association as a condition of the policy.[3]
At the outset, it is clear that the Rules of the Association, an integral part of the policy, protect against risk incurred only by members of the Association in respect to an entered ship. While one must have an insurable interest to be afforded this protection, having an insurable interest in the entered vessel does not make one a member, that is, an insured.[4] It is also *1232 clear that only FPL was a member of the Association, and thus the sole insured, under the policy in question. Therefore, although there was ample proof adduced below to show that IAL was the owner of the vessel "Carlos Miguel," such proof did not and could not vary the clear and unambiguous provision of the policy that only members are insured or alter the fact that only FPL was a member.[5] The well-settled rule "that a court shall not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract," United States Fire Insurance Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d DCA 1976), cert. denied sub nom. Rebozo v. Morejon, 345 So.2d 426 (Fla. 1977); see also Travelers Insurance Co. v. Bartoszewicz, 404 So.2d 1053 (Fla. 1981); Saha v. Aetna Casualty & Surety Co., 427 So.2d 316 (Fla. 5th DCA 1983); Velasquez v. American Manufacturers Mutual Insurance Co., 387 So.2d 427 (Fla. 3d DCA 1980); Parliament Insurance Co. v. Bryant, 380 So.2d 1088 (Fla. 3d DCA), cert. denied, 388 So.2d 1110 (Fla. 1980); Valdes v. Prudence Mutual Casualty Co., 207 So.2d 312 (Fla. 3d DCA 1968), is controlling here.
The appellees' suggestion that in fact, if not in name, it was the "Carlos Miguel" or persons or entities having an insurable interest in the vessel which were the insureds under this protection and indemnity contract is without merit. The essence of this contract of marine insurance has been said to be:
"that it is a contract of INDEMNITY; its sole and exclusive object is to procure for the assured indemnity, in the strictest sense of that word, for any losses he may sustain through the agency of those perils against the effect of which the underwriter by the terms of his policy stands pledged to protect him."
1 M. Mustill and J. Gilman, Arnauld, Law of Marine Insurance & Average § 3 at 5 (16th ed. 1981) (footnote omitted) (hereinafter Arnauld).
See ABA Admiralty and Maritime Law Committee, Marine P&I Policy Annotations (ABA 1982). A P&I policy indemnifies the named insured only unless the policy is issued "to whom it may concern," thereby creating an obligation in the insurer to indemnify anyone with an insurable interest in the entered vessel or listed property. Id. at 2. See also Arnauld, Ch. 8  "Persons Who May Claim On The Policy." Evidence that IAL was the real owner of the "Carlos Miguel" proved at most that IAL had an insurable interest in the vessel, not that IAL was an insured member of Oceanus or that its liabilities were covered under the policy. See S. Huebner, K. Black, Jr. and R. Cline, Property and Liability Insurance 44-45 (3d ed. 1982).
Nor did evidence tending to show that IAS was an agent for IAL[6] aid Fuentes' efforts to prove that IAL was an insured of Oceanus. While it is true that an agent can act for an undisclosed principal who, in turn, can sue to enforce the benefits of the contract, Western Union *1233 Telegraph Co. v. Redding, 100 Fla. 495, 129 So. 743 (1930); see 2 Fla.Jur.2d, Agency & Employment, § 88, 105 (1977), and that "[p]arol evidence is admissible to identify a principal as the real party in a transaction," Pittman v. Roberts, 122 So.2d 333, 334 (Fla. 2d DCA 1960), whether or not IAS was IAL's agent is irrelevant to the issue in this cause, that is, whether IAL was an insured under the Oceanus policy in 1972. As has been previously noted, see n. 3, supra, IAS was listed as a member under the policy when the policy was first procured in 1966, but from the time when the policy was first renewed on February 2, 1967  and therefore, during the time pertinent to this case  FPL was the sole listed member.[7]
Accordingly, the judgment in favor of Fuentes is reversed with directions to enter judgment in favor of Oceanus. Our disposition of this case makes it unnecessary to address Oceanus' remaining points on appeal.
Reversed and remanded with directions.
NOTES
[1] Oceanus suggests that Fuentes did not amend her complaint to join FPL as a defendant because after an attorney appeared on IAL's behalf solely to accept service of process and not to defend the suit, Fuentes knew that no one would defend IAL and that, accordingly, she would obtain a default judgment against IAL.
[2] This was apparently done for the sake of convenience, since a change in the registry of the ship can tie up the use of the ship for months.
[3] The cover slip issued on November 11, 1966, when the "Carlos Miguel" was entered, showed FPL "and/or" IAS as the insured. When the policy was renewed on February 2, 1967, the cover slip then issued, and all cover slips thereafter, including the cover slip in effect at the time Fuentes sustained his illness in 1972, named FPL only.
[4] "Owner" is defined in the Rules as "owner, owners in partnership, owners holding separate shares in severalty, managing owners, part owner, mortgagee, trustee or charterer, operator or manager of a ship"  in effect, one with an insurable interest. This definition of owner closely approximates the list of persons having an insurable interest found in The England Marine Insurance Act, 1906, 6 Edw. 7, Ch. 41, §§ 5(1) and (2). The purpose of restricting members to those having an insurable interest is to prevent the contract from being void as a mere wager. See 1 M. Mustill and J. Gilman, Arnauld, Law of Marine Insurance & Average § 3 (16th ed. 1981). It is clear that as charterer, FPL was an "owner" under the Oceanus policy. FPL's lack of legal title is arguably significant as it relates to the type of coverage available to FPL, since Oceanus insured FPL as title owner, but is not significant in the sense that membership was thereby extended to IAL.
[5] While it is true that under Rule 10 "[t]he Association shall be at liberty to accept entries upon the condition that the Owner shall not become a Member," it does not follow that IAL was covered as a non-member owner. It is undisputed that IAL never applied for this special entry status or followed the necessary procedures to obtain this status.
[6] Although the words "agent for IAL" were printed on IAS's stationery, there is no evidence to show that IAS otherwise held itself out as IAL's agent when in 1966 it procured the insurance from Oceanus.
[7] Oceanus correctly suggests that given the facts that FPL was the sole insured under the policy and that Fuentes' judgment was against IAL, the only potentially viable theories for recovery under the policy were that FPL was either the agent for or alter ego of IAL. Neither of these theories was advanced by Fuentes below nor was there any evidence adduced at trial to support either theory.