[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10770
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-22405-DPG

MT. HAWLEY INSURANCE COMPANY,

Plaintiff -
Counter Defendant -
Appellee,

versus

MIAMI RIVER PORT TERMINAL, LLC,

Defendant -
Counter Claimant -
Appellant,

AUGUSTAVE WILSON, et al.,

Defendants,

NORTH RIVER INSURANCE COMPANY,

Defendant -
Counter Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 16, 2017)

Before TJOFLAT, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Mt. Hawley Insurance Company ("Plaintiff") and North River Insurance Company ("Plaintiff-Intervenor") provide commercial general liability insurance and excess liability insurance, respectively, to Raul and Lucrecia Gonzalez and their businesses. After one of the Gonzalezes' companies, Miami River Port Terminal, LLC, was sued for negligence, Plaintiff and Plaintiff-Intervenor brought a declaratory judgment action seeking a declaration that Plaintiff and Plaintiff-Intervenor had no duty to defend or indemnify Miami River Port Terminal, because Miami River Port Terminal was not a Named Insured and because, even if it was insured, the lawsuit fell outside the policy's coverage. Miami River Port Terminal counterclaimed asserting that Plaintiff had breached its duty to defend and seeking reformation of the policy to add Miami River Port Terminal as a Named Insured. Motions for summary judgment followed, and the district court

2

ordered judgment in favor of Plaintiff and Plaintiff-Intervenor on the declaratory judgment and for Plaintiff on Miami River Port Terminal's counterclaims. On appeal, Miami River Port Terminal asserts that the district court erred when it held that the joint venture allegations in the underlying lawsuit rendered the lawsuit outside the policy's coverage. We agree that the district court erred in its analysis of the joint venture allegations, but affirm because Miami River Port Terminal is not insured under the policy and thus not entitled to coverage.

## BACKGROUND

In March 2010, Raul and Lucrecia Gonzalez formed Miami River Port Terminal, LLC ("Defendant") to acquire riverfront property at 3300 N.W. North River Drive in Miami, Florida. On March 30, 2010, Mrs. Gonzalez emailed her insurance agent, Collinsworth, Alter, Fowler, Dowling, and French Group, Inc., requesting that this new company and the new property be added to the Gonzalezes' commercial general liability policy issued by Essex Insurance Company. But because of an error by the Gonzalezes' insurance agent, the policy was not updated to include Defendant. Instead, "Miami River Port Terminal, 3300 NW N River Drive, Miami, FL 333142" was added only as an insured location.

When the policy came up for renewal at the end of 2010, the Gonzalezes' insurance agent prepared an insurance schedule that listed the entities that would

3

need to be included on the new policy. Yet again, Defendant's name was not included as a named insured. As a result, when the Gonzalezes obtained a new policy through XL/Indian Harbor Insurance Company for the period from December 2010 to December 2011, Defendant remained unlisted as an insured entity.

And Defendant was again omitted when the Gonzalezes sought new insurance at the end of 2011. Neither the insurance schedule nor the insurance application prepared by the Gonzalezes' insurance agent listed Defendant as an entity to be insured. 3300 NW N. River Drive was listed, however, as an insured location. So, in December 2011, when the Gonzalezes switched insurance companies and Plaintiff issued the renewal policy, Defendant was still not listed as an insured—though the property address was listed as an insured location.

The policy renewed again in December 2012 with an effective term running through the beginning of December 2013. At the same time, Defendant obtained an excess liability policy through Plaintiff-Intervenor. The excess liability policy's coverage is identical to that of Plaintiff's policy, but has a greater liability limit.

And once again, Plaintiff's policy did not list Defendant as an insured. The Declarations page states that the "Named Insured" is "Raul and Lucrecia Gonzalez dba: Okeechobee Apts (See Schedule)." The Declarations page also refers to the

4

same schedule for the "Location of All Premises You Own, Rent or Occupy." The schedule itself is titled "Named Insured and Location Supplementary Schedule." The schedule states that "The Declarations includes the following as Named Insured(s) and/or Covered Location(s)." First, the schedule lists as "NAMED INSUREDS" fifteen different individuals, partnerships, and limited liability corporations. Defendant is not listed. Next, the schedule lists "LOCATIONS"— forty-four different addresses and places. One of these locations is "Miami River Port Terminal, Miami, FL."

For the Named Insureds listed, the policy states that Plaintiff will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Plaintiff] will have the right and duty to defend the insured against any 'suit' seeking those damages." But Plaintiff's duty to defend is not unlimited; it is cabined both in terms of who and what the policy covers. The policy, in the "WHO IS AN INSURED" section, specifies that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." The policy also imposes conditions for coverage for any tenants or lessees Defendant

5

may have and excludes certain claims that could arise from Defendant's employees.

Defendant apparently did not realize that it was not listed as a Named Insured on the policy until late 2013. Defendant had leased its property to P&L Cargo Services, Inc., and P&L was using the dock to ship goods to and from Miami. On September 17, 2013, Wilson Augustave was working on the dock helping unload a cargo ship. During the unloading, Augustave fell from the dock and suffered severe bodily injuries. Later, in November, the Gonzalezes realized that Defendant was not listed as a Named Insured and requested Defendant be added. Plaintiff agreed to add Defendant as a Named Insured, but only prospectively.

On January 22, 2014, Augustave filed a lawsuit against both Defendant and P&L for his injuries. Augustave sued both for negligence and loss of consortium, but did so in separate counts against each individually (i.e., Count I was for negligence against P&L, and Count II was for negligence against Defendant). In the complaint's general factual allegations, Augustave alleged that Defendant and P&L shared the same address, worked together in shipping goods, and that their negligence in operating the dock caused his injuries.

6

Defendant filed a claim for coverage with Plaintiff.  Plaintiff initially denied coverage in March 2014 on the basis that, among other things, Defendant had not met the conditions precedent for claims arising from a tenant's conduct.  But, in April, Plaintiff reversed its decision and, under a reservation of rights, agreed to defend against Augustave's lawsuit.

On October 8, 2014, Augustave amended his complaint.  The amended complaint expressly included as one of its allegations an assertion that Defendant and P&L were operating "a joint venture to import and/or export goods to and from Haiti."  Plaintiff continued to defend the lawsuit, but filed a declaratory judgment action seeking a declaration that Plaintiff had no duty to defend or indemnify.  Plaintiff asserted that Defendant was not entitled to coverage because, according to the allegations in Augustave's original and amended complaints, (1) Augustave's injuries arose from a joint venture that was not covered under the policy, (2) Defendant itself was not a Named Insured, (3) Defendant had not satisfied the conditions for a claim arising out of a tenant's conduct, and (4) Augustave was Defendant's employee and his claim was therefore not covered under the employer exclusions.  Plaintiff-Intervenor filed an intervenor complaint adopting the same position as Plaintiff.  Defendant answered and counterclaimed, alleging that Plaintiff breached its duty to defend by initially refusing to defend

7

against Augustave's original complaint and seeking reformation of the policy to add Defendant as a Named Insured—asserting that Defendant had been erroneously added only as an insured location and not as a Named Insured.

Dueling summary judgment motions followed. The district court ordered judgment in favor of Plaintiff and Plaintiff-Intervenor on the declaratory judgment action and in favor of Plaintiff on Defendant's counterclaims. The court held that Plaintiff and Plaintiff-Intervenor had no duty to defend or indemnify Defendant because Augustave's complaints alleged that his injury arose from a joint venture between Defendant and P&L that was not listed as a Named Insured on the policy. On Defendant's counterclaims, the court held that there was no breach of the duty to defend because Plaintiff had no duty because of the joint venture allegations. And the court rejected Defendant's counterclaim for reformation because Defendant was not listed as a Named Insured because of its own mistake—not Plaintiff's—and reforming the policy would make meaningless the policy's distinctions between covered locations and Named Insureds.

Defendant appealed. Defendant now contends that the district court erred in granting summary judgment for Plaintiff on the declaratory judgment action and Defendant's counterclaim because the joint venture allegations in Augustave's complaint do not establish that all of the claims against Defendant are outside the

8

policy's coverage.  Although we agree that the district court erred in its analysis of this issue, we agree with the district court's conclusion that Defendant is not a Named Insured, meaning that Defendant cannot establish an entitlement to coverage in the first place.  We **AFFIRM** the district court accordingly.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  On summary judgment, we view all evidence and draw all reasonable factual inferences in favor of the nonmoving party.  *Id.*  A movant is entitled to summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## DISCUSSION

We begin with the district court's analysis of the joint venture allegations in Augustave's complaint.  Because this case arose under diversity jurisdiction and presents no issues of federal law or treaties, we apply state law.  *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017). Under Florida law, an insurer's duty to defend is determined by the "allegations in the complaint."  *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005).  An insurer has a duty to defend "when the complaint alleges facts that

9

fairly and potentially bring the action within policy coverage." *Id.* (citations omitted). Hence, this analysis focuses on the "grounds for liability expressed by allegations of fact." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (quotation marks and citation omitted). "Any doubts regarding the duty to defend must be resolved in favor of the insured," *Jones*, 908 So. 2d at 443, so an insurer is obligated to defend even when it is "uncertain whether coverage exists," *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010). And, if there are two or more grounds for liability, so long as one is covered by the policy, the insurer must defend the whole lawsuit. *Baron Oil v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813–14 (Fla. 1st Dist. Ct. App. 1985).

Here, the district court erred in holding that Augustave's complaint "clearly reflects that his ***entire claim*** is based on events that occurred as a result of the joint venture" between Defendant and P&L. (Emphasis in original). In doing so, the district court glossed over at least one allegation that expressly established grounds for liability based on only Defendant's conduct. Specifically, in both Augustave's original and amended complaint, the negligence claim against Defendant includes the allegation that Defendant "owned the subject property and had legal duties towards business invitees to ensure the premises was in a reasonably safe condition

10

and to regularly inspect for dangerous conditions." Thus, to prove a negligence claim based on premises liability, Augustave need not rely on the joint venture's conduct, just Defendant's. Defendant's premises liability could arise solely from Defendant's ownership and maintenance of the property. *See Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 320 (Fla. 2001) ("All premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition."). Granted, Augustave's complaint is not clear about what in particular made the premises unsafe in violation of Defendant's duty. And the allegations that P&L was also doing business on the property in coordination with Defendant and failed to maintain a safe work environment raise the specter that P&L or the alleged joint venture may have had "actual possession and control" over the portion of the property that was negligently maintained—which would shift liability from Defendant to P&L or the joint venture. *See Trainor v. PNC Bank, Nat'l Ass'n*, 211 So. 3d 366, 368 (Fla. 5th Dist. Ct. App. 2017). But the allegations do not conclusively establish that P&L or the joint venture had such control, and they instead pin premises liability only on Defendant. So, taking all doubts and uncertainty in favor of Defendant, Augustave alleged at least one theory of negligence liability that arose out of Defendant's conduct—its ownership and maintenance of its property. *See, e.g.*, *Biltmore Const. Co., Inc. v. Owners Ins.*

11

*Co.*, 842 So. 2d 947, 949 (Fla. 2d Dist. Ct. App. 2003) (holding that, although allegations were not specific as to what property was damaged, they could be fairly read to include property covered by the insurance policy).

The district court came to the opposite conclusion by reading the complaints as a whole in light of the joint venture allegations. In particular, the court grounded its analysis on the holding of *Kenneth Cole Productions, Inc. v. Mid-Continent Casualty Co.*, 763 F. Supp. 2d 1331 (S.D. Fla. 2010) (Jordan, J.), which held that joint venture allegations in the underlying complaint placed a lawsuit outside of a policy's coverage. *Kenneth Cole*, however, is inapposite here. First, the complaint in *Kenneth Cole* alleged negligence solely based on the conduct of the joint venture and the defendants acting together. Unlike in this case, there were no allegations that one defendant's conduct, alone, created negligence liability. Second, the parties in *Kenneth Cole* never raised the issue that the complaint may have established alternate grounds for liability apart from the allegations about the joint venture's conduct. So the district court was never squarely presented with the opportunity to rule on the issue before us today.

Ultimately, the fact that Augustave's complaint alleges that Defendant and P&L were engaged in a joint venture does not mean that all of the negligent conduct was the joint venture's. *Cf. Lime Tree*, 980 F.2d at 1405–06 (holding that

12

a complaint that included only allegations of intentional wrongdoing also set forth grounds for liability based on unintentional wrongdoing).  As discussed above, the express allegations in Augustave's complaint establish both that P&L and Defendant could have been engaged in a joint venture and, at the same time, that Defendant could be negligent entirely independent of the joint venture's conduct. Thus, the district court erred in finding that Plaintiff and Plaintiff-Intervenor were relieved from any duty to defend based on Augustave's joint venture allegations.

Nevertheless, we affirm the district court's order because Defendant is not a Named Insured and cannot establish entitlement to coverage.  The district court, when addressing Defendant's counterclaim for reformation, acknowledged that Defendant "is not listed as a Named Insured."  And by granting judgment to Plaintiff on the counterclaim (which Defendant did not appeal), the district court implicitly recognized that Defendant is still not a Named Insured.  Although the court's conclusion that Defendant was not a Named Insured did not ground its holding that Plaintiff and Plaintiff-Intervenor had no duty to defend, the court's logic and analysis demonstrates that Plaintiff and Plaintiff-Intervenor had no duty to defend because Defendant was never covered by the policy.  Indeed, Defendant itself acknowledged as much by seeking reformation in the first place.

13

"We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). To determine whether Defendant is covered under the policy, we look first to the policy's text. We give the policy terms their plain meaning and read them in light of the policy as a whole, giving every provision its "full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Ambiguous provisions are interpreted in favor of coverage, but the provision must "actually be ambiguous." *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Courts are not "authorized to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So. 2d 95, 97 (Fla. 5th Dist. Ct. App. 1991). And when interpreting a policy to determine who is covered, it is a "well-settled rule 'that a court shall not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract.'" *Oceanus Mut. Underwriting Ass'n (Bermuda) Ltd. v. Fuentes*, 456 So. 2d 1230, 1232 (Fla. 3d Dist. Ct. App. 1984) (quoting *U.S. Fire Ins. Co. v. Morejon*, 338 So. 2d 223, 225 (Fla. 3d Dist. Ct. App. 1976)). In particular, "the term 'named insured' has a restricted meaning and does not apply

14

to persons not specifically named in the policy." *Se. Fidelity Ins. Co. v. Suwannee Lumber Mfg. Co., Inc.*, 411 So. 2d 950, 951 (Fla. 1st Dist. Ct. App. 1982).

Under the policy, Defendant is not a Named Insured and cannot demonstrate an entitlement to coverage. The policy states that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." The Declarations specify that the "Named Insured" is "Raul and Lucrecia Gonzalez dba: Okeechobee Apts (See Schedule)." And the "Named Insured and Location Supplementary Schedule" does not list Defendant as a Named Insured. Indeed, as noted, Defendant acknowledged as much in its counterclaim for reformation that expressly sought to add Defendant as a Named Insured.

Defendant's arguments to the contrary are unpersuasive. First, Defendant contends that the Named Insureds on the Declarations page incorporates the entire schedule, including "Miami River Port Terminal, Miami, FL," which is listed as a "LOCATION" on the schedule. But "See Schedule" suggests neither that the schedule itself is incorporated entirely nor that it only contains Named Insureds; it merely indicates that additional Named Insureds are listed on a separate schedule. And the Declarations page also refers to the same schedule for the "Location of All

15

Premises You Own, Rent or Occupy." Consistent with the Declarations page's indications that more than just Named Insureds are listed on the schedule, the schedule itself—through its title, substance, and organization—shows that it includes both "Named Insured(s) and Covered Location(s)," which are presented in two wholly separate and clearly labeled lists. Even if the schedule were wholly incorporated, Defendant would still not be covered. The location listed (Miami River Port Terminal, Miami, FL) is not Defendant (Miami River Port Terminal, LLC).

Second, Defendant claims that the "Designated Premises Endorsement"—which provides coverage for claims arising out of the ownership, maintenance, or use of the locations listed in the schedule—demonstrates that Plaintiff is already insuring the risks that arise from the property. This may be correct, but it does not change the fact that only Named Insureds are covered for claims related to the listed locations. And, again, Defendant is not a Named Insured.

Finally, Defendant contends that its arguments above, coupled with the fact that Miami River Port Terminal is the only location listed without a street address, creates an ambiguity that should be interpreted in Defendant's favor. Yet Defendant has failed to establish the existence of multiple reasonable interpretations necessary for the policy to be ambiguous. Defendant's

16

interpretation—that the locations listed in the schedule are actually Named Insureds—renders meaningless every portion of the policy that distinguishes between covered locations and Named Insureds and treats the two differently. The only reasonable interpretation that gives meaning to these distinctions is dictated by the policy's plain text: that "LOCATIONS" are locations and "NAMED INSUREDS" are Named Insureds. *See Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. 5th Dist. Ct. App. 1994) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.").

Because Defendant is not a Named Insured, Defendant cannot establish an entitlement to coverage—let alone a duty to defend or indemnify.

## CONCLUSION

We **AFFIRM** the district court's entry of judgment in favor of Plaintiff and Plaintiff-Intervenor on the declaratory judgment action, and in favor of Plaintiff on Defendant's counterclaim.