DARRIN P. GAYLES, UNITED STATES DISTRICT JUDGE
*1184 THIS CAUSE comes before the Court on Defendant/Counter-Plaintiff Maryland Casualty Company's ("Maryland Casualty") Motion for Summary Judgment ("Motion"). [ECF No. 133]. The Court has reviewed the Motion, the record, arguments of counsel, and is otherwise fully advised. For the reasons that follow, Maryland Casualty's Motion is GRANTED .
BACKGROUND
I. The Policies
This dispute centers on the proper construction of an insurance policy. According to the allegations in the Amended Complaint, Plaintiff/Counter-Defendant Allied World National Assurance Company ("Allied World") is an insurance company. Allied World insured Doctor's Associates, Inc., ("DAI") under a general liability umbrella policy (the "Allied World Policy"). There is no dispute that DAI was covered under the terms of the Allied World Policy at all relevant times. For the purposes of this litigation, Maryland Casualty contends (and Allied World does not dispute in its Response) that Allied World is properly considered a subrogee of DAI. See [ECF No. 133, at 7 (citing Nat'l Ins. Co. of Hartford v. Fortune Constr. Co. , 320 F.3d 1260, 1270 n. 13 (11th Cir. 2003) ].[1]
DAI is the national franchisor of Subway brand restaurants. During the relevant period, DAI granted several Subway franchises to Florida entities, who subsequently assigned or ran their franchises pursuant to DAI's franchise agreements.[2] DAI also entered into a business relationship with Family Development Partners ("FDP") under the terms of a "Development Agreement." Under the Development Agreement, FDP would provide consulting services to DAI for operation of South Florida Subway franchises. The Development Agreement expressly stated that FDP was not an employee or partner to DAI; it was an independent contractor employed specifically to develop and service Subway restaurants. The Development Agreement also required that FDP purchase general liability insurance and name DAI as an additional insured.
Defendant/Counter-Plaintiff Maryland Casualty insured FDP under policy no. PAS 04964476 (the "Maryland Casualty Policy"). The Maryland Casualty Policy contained a commercial general liability coverage form agreeing to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' " when the *1185 insurance applied. [ECF No. 132-2, at 159]. Section II designates who is an insured, as follows:
SECTION II - WHO IS AN INSURED
* * *
2. Each of the following is also an insured:
* * *
e. Any person or organization with whom you agree, because of a written contract, to provide insurance such as is afforded under the policy, but only with respect to liability arising out of your operations, "your work" or facilities owned or used by you.
This provision does not apply:
(1) To any vendor, concessionaire, lessor of leased equipment, grantor of a franchise, engineer, architect or surveyor;
or
(2) Unless the contract has been signed prior to the date of "bodily injury", "property damage", or "personal or advertising injury."
[ECF No. 132-3, at 84]. The Maryland Casualty Policy goes on to state that those FDP contracted with would be included as insureds "only in connection with liability arising out of the operation of [its] business; [and] only to the extent that coverage is afforded to that person or organization by 'underlying insurance....' " [ECF No. 132-3, at 168].
The parties dispute how or if each of these contracts-the Allied World Policy, the Maryland Casualty Policy, and the Development Agreement-provide coverage for the Subway franchises and their employees.
II. The Underlying Litigation
On September 14, 2011, while the Development Agreement was in force, an employee at one of the South Florida Subway restaurants was injured during a robbery. At the time of the incident, DAI was the franchisor of that Subway, and Subway Two, Inc., ("Subway Two") was the franchisee. The employee sued to recover damages for his injuries (the "Farooq Action"). The Farooq Action carried two theories alleging DAI's liability as franchisor of Subway Two: that DAI was vicariously liable for Subway Two's negligence and that DAI was negligent for failing to provide proper security.
DAI obtained a release from the litigation after Allied World funded a settlement. The settlement, in part, provided that 75% of the funds were for the release of FDP and others to resolve DAI's vicarious liability. However, DAI was not sued on a theory of vicarious liability as to FDP and FDP was not a defendant in that action.
III. This Action
Allied World now brings this subrogation suit against Maryland Casualty, seeking to recover fees incurred in the Farooq Action, including attorney's fees and settlement funds incurred in obtaining the release for FDP. Maryland Casualty argues it had no duty to defend DAI (or Allied World) and thus is not obligated to indemnify Allied World. Maryland Casualty filed a cross-claim for declaratory relief against FDP and a counterclaim against Allied World. [ECF No. 55]. The Court previously dismissed certain claims in the Amended Complaint, leaving only (1) Allied World's Claim for Breach of Contract against Maryland Casualty; (2) Allied World's Claim for a Declaration Regarding Maryland Casualty's Duty to Defend and Indemnify; and (3) Maryland Casualty's *1186 Counter-Claim and Cross-Claim. [ECF No. 77]. The Court also dismissed other Cross-Plaintiffs/Defendants (FDP and its officers) to Maryland Casualty's Cross-Claims, leaving only Maryland Casualty and Allied World as parties to this litigation. [ECF No. 130]. Maryland Casualty now moves for summary judgment against Allied World.
ANALYSIS
I. Summary Judgment Standard
Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' " Tolan v. Cotton , 572 U.S. 650, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a) ). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. Harrison v. Culliver , 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." Hickson Corp. v. N. Crossarm Co. , 357 F.3d 1256, 1259-60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. SEC v. Monterosso , 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." Urquilla-Diaz v. Kaplan Univ. , 780 F.3d 1039, 1050 (11th Cir. 2015).
II. Duty to Defend/Duty to Indemnify
Whether an insurer has a duty to defend "is determined by examining the allegations in the complaint filed against the insured." Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co. , 980 F.2d 1402, 1405 (11th Cir. 1993) (citing Nat'l Union Fire Ins. Co. v. Lenox Liquors Inc. , 358 So.2d 533, 536 (Fla. 1978) ). "To determine whether [the insurer] ha[s] a duty to defend [the insured], the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy ." Evanston Ins. Co. v. Haven S. Beach, LLC , 152 F.Supp.3d 1370, 1374 (S.D. Fla. 2015) (emphasis added). If the Underlying Complaint "alleges facts that fairly and potentially bring the suit within policy coverage," the insurer has a duty to defend its insured. Jones v. Fla. Ins. Guar. Ass'n , 908 So.2d 435, 442-43 (Fla. 2005) (citations and internal punctuation omitted). By contrast, "[w]here the allegations in the complaint show that no coverage exists or a policy exclusion applies, no duty to defend arises." James River Ins. Co. v. Bodywell Nutrition, LLC , 842 F.Supp.2d 1351, 1354 (S.D. Fla. 2012) (citing Posigian v. Am. Reliance Ins. Co. of N.J. , 549 So.2d 751, 753 (Fla. 3d DCA 1989) ). "The allegations of the complaint govern the duty to defend even if they may be factually incorrect or without merit," Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co. , 696 So.2d 907, 910 (Fla. 3d DCA 1997), but if those allegations leave any doubt as to the duty to defend, the question must be *1187 resolved in favor of the insured, Trizec Props. Inc. v. Biltmore Const. Co. , 767 F.2d 810, 811-12 (11th Cir. 1985).
While the duty to defend "is controlled by the allegations in the complaint against the insured," the duty to indemnify "is determined by the underlying facts of the case." State Farm Fire & Cas. Co. v. CTC Dev. Corp. , 720 So.2d 1072, 1077 n.3 (Fla. 1998). "[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify." Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co. , 657 F.3d 1135, 1146 (11th Cir. 2011) (quoting Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n , 595 F.Supp.2d 1319, 1322 (S.D. Fla. 2009) ); see also Certain Interested Underwriters at Lloyd's, Lon. v. AXA Equitable Life Ins. Co. , 32 F.Supp.3d 1226, 1230 & n.2 (S.D. Fla. 2014) (collecting federal and state court cases applying the "principle that a finding of no duty to defend, as a matter of Florida law, necessarily includes a finding of no duty to indemnify").
Maryland Casualty makes two arguments in support of its Motion: (1) that the Maryland Casualty Policy excludes coverage to DAI (and Allied World, as subrogee) under Section II's "grantors of a franchise" exclusion and (2) that the Farooq Action did not allege that DAI's liability arose out of FDP's work or operations. Because no party disputes any of the facts at issue, all that remains are issues of law that the Court can resolve at summary judgment. See Auto Mobility Sales, Inc. v. Praetorian Ins. Co. , No. 14-cv-80094-DPG, 2015 WL 3970578, at *2 (S.D. Fla. June 30, 2015).
III. Grantor of a Franchise
Section II of the Maryland Casualty Policy excludes "grantor[s] of a franchise" from coverage. Maryland Casualty argues that it had no duty to defend DAI because DAI is the grantor of the Subway Two franchise and, thus, is not an insured under the plain language of Section II. Allied World, in turn, argues that the phrase "grantor of a franchise" is ambiguous.
In Florida, a clear and unambiguous policy provision "should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Interline Brands, Inc. v. Chartis Specialty Ins. Co. , 749 F.3d 962, 965 (11th Cir. 2014) (citing Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co. , 913 So.2d 528, 532 (Fla. 2005) ); see also Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC , 228 F.Supp.3d 1313, 1327 (S.D. Fla.), aff'd , 713 F. App'x 951 (11th Cir. 2017) ("Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy, and [a] court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect ...") (internal citations and quotations omitted). If a coverage exclusion provision is ambiguous, the Court shall construe it in favor of the insured. Deni Assoc. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co. , 711 So.2d 1135, 1140 (Fla. 1998). A provision is ambiguous if, "after resort to the ordinary rules of construction, the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." Interline Brands, Inc. , 749 F.3d at 965 (citing Taurus Holdings, 913 So.2d at 532 ) (internal quotations omitted). However, a provision is not ambiguous merely because it requires analysis to interpret it. Id. at 965 (citing Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc. , 874 So.2d 26, 31 (Fla. 2d DCA 2004) ).
The Court finds the term "grantor of a franchise" to be unambiguous. Although *1188 Allied World cites several sources of definitions in an effort to show that the term "franchise" can have different meanings, only one definition-which is consistent across each source-applies here: the licensing agreement between parties where a franchisee markets products or services in a manner prescribed by the franchisor. See [ECF No. 142, at 5-7 (citing Merriam Webster's Dictionary, Black's Legal Dictionary, and Florida cases) ].
And Allied World points to no authority to support its position. To the contrary, each case it cites compels the Court's conclusion. Auto-Owners Insurance Co. v. Smith , 340 Ga.App. 574, 798 S.E.2d 93, 96 (2017) (finding no ambiguity where an additional endorsement clarified the intention of the parties in naming defendant as an insured "only with respect to their liability as grantor of a franchise to [a third party]"); Paternostro v. Choice Hotel Int'l Servs. Corp. , No. CIV.A. 13-0662, 2015 WL 3539680, at *7 (E.D. La. June 3, 2015) (finding no ambiguity because the phrase "insured ... with respect to [ ] liability as grantor of a franchise" meant that claims falling within the franchise agreement were covered, but those outside were not) (internal quotations omitted); Pekin Ins. Co. v. Equilon Enterprises LLC , 366 Ill.Dec. 780, 980 N.E.2d 1139, 1144 (Ill. App. 1st 2012) (finding no ambiguity where "[t]he existence of these two endorsements for additional-insured coverage necessarily means that the 'Grantors of Fran' endorsement does not provide the only coverage to Shell, as the additional insured."). One key difference between these cases and the instant action is that here no separate endorsement or other later-attached amendment exists to further clarify the parties' relationship as to the extent of coverage for a "grantor of a franchise." E.g., Pekin , 366 Ill.Dec. 780, 980 N.E.2d at 1144. But in any event, the Court has not identified a case finding the phrase "grantor of a franchise" to be ambiguous.
Allied World's final argument, that the subsections of Section II make coverage ambiguous, is also meritless. Sections II(2)(e)(1) and (2) are divided by the disjunctive "or." See [ECF No. 132-3, at 84 ("This provision does not apply: (1) To any vendor, concessionaire, lessor of leased equipment, grantor of a franchise, engineer, architect or surveyor; or (2) Unless the contract has been signed prior to the date of 'bodily injury', 'property damage', or 'personal or advertising injury.' ") (emphasis added) ]. According to Allied World, this creates ambiguity because it requires reading the alternatives separately, with the practical effect of excluding a grantor of a franchise from coverage under (1), but including it under (2) if the contract was signed before the injury.
Insurance policies are to be read "in their ordinary sense." See A & M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co. , 291 F.Supp.3d 1318, 1337 (S.D. Fla. 2017) ("The 'terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction.' ") (citing Siegle v. Progressive Consumers Ins. Co. , 819 So.2d 732, 736 (Fla. 2002) ). Here, the disjunctive only requires reading alternatives separately insofar as their application to any given party. In other words, the disjunctive gives alternative ways a party may be covered or not covered. It does not require a party to evaluate whether it falls under both of the subsections if it clearly falls under one. So, if DAI is excluded under subsection (1), that suffices to exclude coverage; continuing on to read the remainder of the subsection to determine if coverage exists elsewhere forces a "strained ...
*1189 construction" that contravenes the parties' intent. Id.
The Court therefore finds that, in this context, the phrase "grantor of a franchise" is not ambiguous. Here the parties clearly intended to exclude from coverage the grantor of the franchise-in this case, DAI.[3]
CONCLUSION
Accordingly, it is
ORDERED AND ADJUDGED that Defendant/Counter-Plaintiff Maryland Casualty Company's Motion for Summary Judgment is GRANTED . This action is CLOSED for administrative purposes and all pending motions are DENIED as MOOT.
DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of February, 2019.

As a subrogee, Allied World steps into the shoes of DAI and brings claims and arguments as if the parties were one. See Employers Ins. Co. of Wassau v. Hera GmbH & Co. KG , No. 07-cv-21944, 2008 WL 11333564, at *5 (S.D. Fla. Oct. 1, 2008) (citing Scott & Jobalia Constr. v. Halifax Paving, Inc. , 538 So.2d 76, 79 (Fla. 5th DCA 1989) ).

The Court adopts and incorporates the recitation of facts in Judge Ungaro's prior Order on Motion for Reconsideration [ECF No. 77], which more broadly lays out this action's complicated factual and procedural history, as well as the numerous parties involved since it was originally filed in 2013.

Because Maryland Casualty would only have a duty to defend Allied World if coverage were provided under the policy, the Court need not determine whether the duty arose out of the Farooq Action.